FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
04/14/2021 05:37 PM
CV 2021 04 0520

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| ADREIANNE JACKSON<br>1416 Young Street<br>Middletown, OH 45044<br><br>        Plaintiff,<br><br>        v.<br><br>PAC WORLDWIDE CORPORATION<br>3131 Cincinnati Dayton Rd.<br>Middletown, OH 45044<br><br>**Serve Also:**<br>PAC Worldwide Corp.<br>12110 Champion Way<br>Sharonville, OH 45241<br><br>PAC Worldwide Corp.<br>15435 NE 92nd Street<br>Redmond, WA 98052<br><br>PAC Worldwide Corp.<br>c/o Todd Reed (Stat. Agent)<br>46 Ruby Ave.<br>Wilmington, OH 45177<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff Adreianne Jackson, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Jackson is a resident of the city of Middletown, Butler County, state of Ohio.

2. Defendant PAC Worldwide Corporation ("PAC") is a foreign corporation that conducts business within Ohio. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred at PAC's location at 3131 Cincinnati Dayton Rd., Middletown, OH 45044.

3. At all times referenced herein, PAC was Jackson's employer within the meaning of Ohio R.C. §4112.01(A)(2) and Title VII of the Civil Rights Act of 1964, U.S. Code, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

4. On January 8, 2021, within 300 days of the adverse employment actions described herein, Jackson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00434.

5. That Charge is currently pending before the EEOC, and Jackson intends to amend her complaint to include claims for race and gender discrimination, sexual harassment, and retaliation under Title VII.

6. All the material events alleged in this Complaint occurred in Butler County, Ohio.

7. Therefore, personal jurisdiction is proper over PAC pursuant to R.C. §2307.382(A)(1), (2), (3) and/or (4).

8. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3) and/or (6).

## FACTS

9. Jackson is a former employee of PAC.

10. Jackson worked for PAC as a Machine Operator from April 30, 2018, until PAC unlawfully terminated Jackson's employment on or about July 22, 2020.

11. Jackson is an African American female, and thus, is in protected classes under R.C. §4112 and Title VII for her race and sex/gender, respectively.

12. At all times noted herein, Jackson was fully qualified for her position with PAC.

13. Jackson had an exemplary employment record with no history of discipline in the years she worked for PAC.

14. Jackson came to the job with PAC after an interview with Noe Mendez (HR, male, Hispanic) and two others.

15. Jackson had an initial one-week orientation and then moved to the operating floor in early May 2018, where she continued her training through the rest of the summer.

16. In or around Fall 2018, Jackson worked in the paper department. She returned to the poly department shortly after.

17. By October/November 2018, Jackson was certified as an Operator II and was given a raise at the end of the year.

18. Throughout Jackson's employment with PAC, she was sexually harassed by numerous different male colleagues.

19. Jackson faced constant whistles and comments on her body and was even offered money in exchange for sex by Richard Taylor (machine operator, Caucasian).

20. Justin Davis (machine operator, Caucasian) also repeatedly told Jackson that he would "love to hit that."

21. Even worse, Jackson was even touched on a few occasions: Josh Lillie (machine operator, Caucasian) grabbed her buttocks at work more than once without her consent.

22. Johnny Bateman (supervisor, Caucasian) sent Jackson several text messages asking for nudes, asking her to come to his home, and talking about her body.

23. Finally in this non-exhaustive list, Mike Griffin (extruder operator, Caucasian) made frequent derogatory and gross comments about Jackson and other women at work. For instance, he often said to his male colleagues to "look at the ass on her" and "look at the tits on her."

24. Even more disgusting, Griffin told Jackson once when she bent over to pick up a tool at work that he had "seen [her] whole pussy bent over."

25. Ricky Barnes (supervisor, Caucasian) also, when checking temperatures during the pandemic, commented that he knew Jackson would be "hot" in her temperature check – this was an obvious comment on her appearance as well.

26. Jackson reported this sexual harassment to her supervisors and/or Human Resources.

27. No action was taken by PAC to stop the harassment or discipline the harassers.

28. By the following Fall 2019, Jackson applied for an operator training position.

29. At the time, the position had only two applicants: Jackson and Melissa Justice (then-machine operator, Caucasian).

30. Jackson was the only one of the two applicants actually qualified for the job.

31. The primary disqualifier for Justice was that the trainer position required basic knowledge of all converting machines at PAC. Jackson had cross-trained on every machine by that point and was familiar with each machine, while Justice was not.

32. Despite not being qualified, Justice was promoted to the trainer position.

33. The same day, PAC offered Jackson a mentor position with a small raise.

34. Jackson did not view this as much of a promotion, but at least she was now in a quasi-lead position.

35. Jackson spoke later with Melissa Garber (HR, Caucasian) complaining that she was passed over for the promotion despite being more qualified than Justice.

36. Garber provided no legitimate business reason for PAC's decision to promote Justice over Jackson.

37. In or around early 2020, Jackson applied for a lead operator position and interviewed with Troy Cash (production manager, Caucasian).

38. Cash asked Jackson only one question – if she wanted the job (a silly question since Jackson applied for the job) – and then told her she would not get it because of her attendance points.

39. Cash also told Jackson she was "almost ready" for the lead position, but she needed to "level it down a little bit" first.

40. Jackson had no idea what Cash meant by that statement. Again, Jackson was unsure why she was passed over for the promotion.

41. In or around March 2020, the COVID-19 pandemic hit the state. As PAC was considered an essential employer, Jackson kept working through the shutdowns.

42. PAC also implemented a change in its attendance policies allowing for greater call-offs for medical reasons.

43. Jackson worked from March through June with zero call-offs.

44. On or about June 25, 2020, Jackson fell ill (not with coronavirus) and was off work for about a week.

45. Jackson returned on June 30 after providing a doctor's note.

46. On or about the June 30, 2020, PAC changed its attendance policies again, and Jackson accrued attendance points as a result of the new policy.

47. The change gave points even for medical call-offs, excluding when those call-offs were related to COVID-19.

48. This change in policy was directly related to Jackson missing work.

49. On or about July 20, 2020, Jackson reported to work for an overtime shift but was sent home quickly after Chad (LNU, supervisor, Caucasian) saw how ill she was and sent her home.

50. Jackson was off the next day for the same reason and went to the doctor.

51. Jackson received a note from the doctor but knew PAC would not accept it, so she went into work anyway.

52. Cierra Allen (African American) commented on how terribly ill Jackson looked that day and told her to speak to a supervisor.

53. While Jackson was at her desk, Ricky Barnes (supervisor) approached her and commented on how sick she looked.

54. Jackson said she wanted to go home, but that she was 1/2 an attendance point away from termination, so could not leave.

55. Barnes made note of this and told Jackson to go home anyway; she did.

56. The following day, Noe texted Jackson and told her not to come in as she was fired.

57. Jackson pushed back, noting how Barnes specifically told her to go home and how she had provided doctors' notes for her other absences, so she should not have accrued points.

58. Noe told her to wait while he figured out the situation, but the following day, July 23, 2020, he terminated Jackson's employment anyway, effective the July 22.

59. Jackson's termination was an adverse employment action by PAC.

60. Jackson was actually terminated due to her race, her gender, and/or in retaliation for complaining about the sexual harassment and not being promoted.

61. PAC's purported reason for Jackson's termination is pretext for discrimination and retaliation.

62. As a result of being terminated from PAC due to discrimination and retaliation, Jackson has had and continues to accrue damages based thereupon.

## COUNT I: RACE DISCRIMINATION

63. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

64. Throughout her employment, Jackson was qualified for and could fully perform her essential job duties.

65. Throughout Jackson's employment, she faced disparately negative treatment in comparison to her Caucasian colleagues.

66. As an example, despite being more qualified than her competition for multiple positions, PAC chose to hire the white applicants over her.

67. As another example, Kelly Hicks and Charles Allen (both machine operators, Caucasian) had higher attendance point levels than Jackson at the time of her termination but were not fired for their points.

68. PAC treated Jackson differently than other similarly situated employees based on her race.

69. PAC violated R.C. § 4112.02 *et seq.* by discriminating against Jackson due to her race.

70. On or about July 23, 2020, PAC terminated Jackson without just cause.

71. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

72. PAC terminated Jackson based on her race.

73. PAC violated R.C. § 4112.01 *et seq.* when it terminated Jackson based on her race.

74. Jackson suffered emotional distress as a result of PAC's conduct, and she is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

75. As a direct and proximate result of PAC's conduct, Jackson has suffered and will continue to suffer damages.

## COUNT II: FAILURE TO PROMOTE
### (2019 Operator Training Position)

76. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Jackson is African American. At all times relevant, Jackson was a member of a statutorily-protected class under R.C. §4112 for her race.

78. In or around Fall 2019, Jackson applied for an operator training position.

79. Jackson was fully qualified for this opportunity.

80. PAC did not hire/promote Jackson to this position. Instead, PAC chose Melissa Justice (Caucasian), who was not qualified for the position.

81. PAC's purported reason (or lack thereof) for passing Jackson over for this promotion was pretextual.

82. PAC actually failed to promote/hire Jackson based on her race.

83. Jackson's race was a determinative factor in PAC's decision not to promote Jackson.

84. PAC promoted a less-qualified individual outside Jackson's protected class in place of Jackson.

85. PAC violated R.C. §4112.02, *et seq.* when they failed to promote/hire Jackson based on her race.

86. Jackson incurred emotional distress damages as a result of PAC's conduct described herein.

87. As a direct and proximate result of PAC's acts and omissions, Jackson has suffered and will continue to suffer damages.

## COUNT III: FAILURE TO PROMOTE
### (2020 Lead Operator Position)

88. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. Jackson is an African American female. At all times relevant, Jackson was a member of statutorily-protected classes under R.C. §4112 for her race and gender.

90. In or around early 2020, Jackson applied for a lead operator position.

91. Jackson was fully qualified for this opportunity.

92. PAC did not hire/promote Jackson to this position. Instead, upon information and belief, PAC chose a less-qualified individual outside Jackson's protected classes.

93. PAC's purported reason (or lack thereof) for passing Jackson over for this promotion was pretextual.

94. PAC actually failed to promote/hire Jackson based on her race and/or gender.

95. Jackson's race and/or gender was a determinative factor in PAC's decision not to promote Jackson.

96. PAC violated R.C. §4112.02, *et seq.* when they failed to promote/hire Jackson based on her race and/or gender.

97. Jackson incurred emotional distress damages as a result of PAC's conduct described herein.

98. As a direct and proximate result of PAC's acts and omissions, Jackson has suffered and will continue to suffer damages.

## COUNT IV: GENDER DISCRIMINATION

99. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Throughout her employment, Jackson was qualified for and could fully perform her essential job duties.

101. Throughout Jackson's employment, she faced disparately negative treatment in comparison to her male colleagues.

102. PAC treated Jackson differently than other similarly situated employees based on her gender.

103. PAC violated R.C. § 4112.02 *et seq.* by discriminating against Jackson due to her gender.

104. On or about July 23, 2020, PAC terminated Jackson without just cause.

105. At all times material herein, similarly-situated male employees were not terminated without just cause.

106. PAC terminated Jackson based on her gender.

107. PAC violated R.C. § 4112.01 *et seq.* when it terminated Jackson based on her gender.

108. Jackson suffered emotional distress as a result of PAC's conduct, and she is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

109. As a direct and proximate result of PAC's conduct, Jackson has suffered and will continue to suffer damages.

## COUNT V: SEXUAL HARASSMENT

110. Jackson restates each and every paragraph of this Complaint as though it were fully restated herein.

111. Jackson was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, unwelcome physical touching, and sexual advances from her supervisors and coworkers at PAC.

112. PAC created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

113. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by PAC, Jackson reported the sexual harassment to her supervisor and/or Human Resources.

114. PAC's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. §4112.02(A).

115. The supervisors' and coworkers' sexual harassment of Jackson occurred while they were acting in the course and scope of their employment at PAC.

116. PAC had knowledge of this harassment and failed to take any corrective or remedial action.

117. As a direct and proximate result of PAC's conduct, Jackson has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT VI: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX/GENDER DISCRIMINATION AND SEXUAL HARASSMENT**

118. Jackson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. During her employment with PAC, Jackson was subjected to offensive and harassing conduct by her supervisors and coworkers based on her sex/gender, as well as sexual harassment.

120. PAC knew or should have known of the harassing conduct against Jackson.

121. PAC condoned, tolerated and ratified this harassing conduct.

122. This harassing conduct was severe and/or pervasive.

123. This harassing conduct was offensive to Jackson.

124. This harassing conduct interfered with Jackson's ability to perform her job duties.

125. PAC's offensive and harassing conduct created a hostile and/or abusive work environment for Jackson.

126. PAC's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Jackson.

127. As a direct and proximate result of PAC's conduct, Jackson suffered and will continue to suffer damages.

## COUNT VII: RETALIATION

128. Jackson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

129. As a result of the PAC's discriminatory and harassing conduct described above, Jackson complained of the discrimination, sexual harassment, and disparate treatment she was experiencing.

130. Jackson reported the discrimination and harassment to several supervisors, including, but not limited to, Roderick Boehm (lead operator, Caucasian) and Chad Shell (shipping lead, African American).

131. Subsequent to Jackson's complaints, PAC took adverse employment actions against Jackson, including refusing to promote her and terminating her employment.

132. PAC's actions were retaliatory in nature based on Jackson's opposition to the unlawful discriminatory conduct and sexual harassment.

133. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

134. As a direct and proximate result of PAC's retaliatory discrimination against and discharge of Jackson, she has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Jackson demands from PAC the following:

a) Issue a permanent injunction:

   i. Requiring PAC to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

> v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) An award against PAC for compensatory and monetary damages to compensate Jackson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

c) An award of punitive damages against PAC in an amount in excess of $25,000;

d) An award of reasonable attorneys' fees and non-taxable costs for Jackson's claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew G. Bruce*
Matthew G. Bruce (0083769)
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744
Email: Evan.McFarland@SpitzLawFirm.com
Email: Matthew.Bruce@spitzlawfirm.com

*Attorneys for Plaintiff Adreianne Jackson*

**JURY DEMAND**

Plaintiff Adreianne Jackson demands a trial by jury by the maximum number of jurors permitted.

                                             */s/ Matthew G. Bruce*
                                             Matthew G. Bruce (0083769)
                                             **THE SPITZ LAW FIRM, LLC**